IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2026 JUN -8  PM 3: 33

OFFICE OF THE CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:26CR 3047 |
| Plaintiff, | INDICTMENT |
| vs. | 18 U.S.C. § 2 |
| ANGIE L. ALBERT a/k/a ANGIE L. CONAWAY a/k/a ANGIE ALBERT CONAWAY a/k/a ANGIE CONAWAY ALBERT, and BRENT A. CONAWAY, | 18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)(1)<br>18 U.S.C. § 982(a)(7)<br>18 U.S.C. § 982(b)(1)<br>18 U.S.C. §1347<br>18 U.S.C. § 1349<br>18 U.S.C. § 1957<br>21 U.S.C. § 853(p)<br>28 U.S.C. § 2461(c) |
| Defendants. | |

The Grand Jury charges that

At all times material to this Indictment:

## BACKGROUND

### Defendants

1.      ANGIE L. ALBERT a/k/a ANGIE L. CONAWAY a/k/a ANGIE ALBERT CONAWAY a/k/a ANGIE CONAWAY ALBERT ("ALBERT") was the owner of Albert Behavior Health, LLC, which did business under the name IHOPE Clinic and had offices in Omaha, Nebraska, and Fremont, Nebraska, that operated during at least January 2020 to May 2022. The primary services provided by ALBERT through IHOPE Clinic were psychotherapy and the administration of Spravato to treat certain forms of depression.

2.      ALBERT was licensed as an Advanced Practice Registered Nurse. ALBERT was responsible for evaluating patients and providing psychotherapy services

1

at IHOPE Clinic and was the only healthcare provider at IHOPE Clinic authorized to prescribe Spravato. Between January 2020 and May 2022, the total for Medicare payments associated with Spravato prescriptions written by ALBERT was greater than the total payments for the next three highest Spravato prescribers combined in Nebraska, Kansas, and Missouri.

3. BRENT A. CONAWAY ("CONAWAY"), ALBERT's husband, was licensed as a registered nurse and primarily handled IHOPE Clinic's marketing and finances. CONAWAY also assisted ALBERT with providing Spravato therapy to patients and submitting claims for reimbursement.

4. Three unlicensed, unqualified workers ("WORKERS"), who were also minors, worked at the IHOPE Clinic, including staffing the front desk and monitoring patients. These WORKERS were not trained or licensed as healthcare providers.

**BACKGROUND ON HEALTH CARE BENEFIT PROGRAMS**

5. The Medicare Program ("Medicare") was a federal "health care benefit program," as defined by 18 U.S.C. § 24(b), that provided benefits to persons who were over the age of sixty-five or disabled. Medicare was administered by the United States Department of Health and Human Services through its agency, the Centers for Medicare & Medicaid Services ("CMS"). Individuals who qualified for Medicare benefits were commonly referred to as "beneficiaries," and as beneficiaries, they were eligible to receive a variety of goods and services.

6. The Nebraska Medicaid Program ("Medicaid") was a "health care benefit

program," as defined by 18 U.S.C. § 24(b), that provided benefits to Nebraska residents who met certain eligibility requirements, including income requirements. Medicaid was jointly funded by federal and state sources. Individuals who qualified for Medicaid benefits were commonly referred to as "members," and as members, they were eligible to receive a variety of goods and services.

7.      Medical service providers, like clinics and physicians, could enroll in Medicare and Medicaid to provide services to Medicare beneficiaries and Medicaid members. Upon Medicare and Medicaid enrollment, service providers were permitted to provide medical services and items to beneficiaries and members, and subsequently submit claims to Medicare and Medicaid, through fiscal intermediaries, seeking reimbursement for the cost of services and items provided.

8.      When seeking reimbursement from Medicare and Medicaid, service providers certified that: (a) the contents of the claim forms were true, correct, and complete; (b) the claim forms were prepared in compliance with the laws and regulations governing Medicare and Medicaid; and (c) the services purportedly provided, as set forth in the claim forms, were medically necessary.

9.      Medicare, Medicaid, and other health care benefit programs reimbursed claims submitted by service providers if the services and items provided were medically necessary for the diagnoses and treatment of beneficiaries and members; were in fact provided to beneficiaries and members; and were based on representations from providers that were true, correct, and complete.

3

10.    Conversely, Medicare and Medicaid did not cover and would not reimburse claims for services and items that were not medically necessary, not in fact provided, or not based on claim forms that were true, correct, and complete.

## BACKGROUND ON SPRAVATO

11.    Spravato (esketamine) is a Schedule III Controlled Substance available by prescription only.  It is administered as a nasal spray to treat certain forms of depression.  Due to Spravato's serious potential adverse effects and its potential for abuse and misuse, a healthcare provider administering Spravato must do so under certain restrictions called the Spravato Risk Evaluation and Mitigation Strategy ("Spravato REMS").

12.    The Spravato REMS requires, among other things, that Spravato must be administered only in a healthcare setting under the direct observation of a healthcare provider, and that the patient be monitored after administration for at least two hours for resolution of sedation and dissociation and changes in vital signs.

13.    ALBERT, as the authorized representative of IHOPE Clinic, agreed to comply with the Spravato REMS when administering Spravato.  In fact, one or more of the WORKERS monitored patients' vital signs after Spravato administration.

14.    There were two different ways that a service provider such as IHOPE Clinic could obtain Spravato. It could forward a prescription for Spravato to a pharmacy for a specific amount for a particular patient, receive the Spravato from the pharmacy and administer it to the patient, and bill the insurer only for the cost of administration

4

while the pharmacy billed for the cost of the Spravato ("Pharmacy Buys and Bills"). Alternatively, a service provider could buy Spravato in bulk from a distributor, administer the appropriate amount to a patient, and bill the insurer both for the cost of buying the Spravato and the service of administering Spravato to the patient and ("Provider Buys and Bills").

15.    When ALBERT enrolled IHOPE Clinic to participate in the Spravato REMS program, she specified that IHOPE Clinic would acquire Spravato using the Pharmacy Buys and Bills method rather than the Provider Buys and Bills method.

16.    IHOPE Clinic never paid to acquire the Spravato it administered to patients.  ALBERT wrote prescriptions for Spravato and sent them to a pharmacy in Omaha, Nebraska (the "Pharmacy") to be filled.  The Pharmacy delivered the Spravato to the IHOPE Clinic prior to the patient's arrival.  Since the Pharmacy bought the Spravato, it billed the insurer for the cost of the Spravato.

### BACKGROUND ON PSYCHOTHERAPY SERVICES

17.    Psychotherapy is the treatment of mental illness and behavioral disturbances in which the physician or other qualified health care professional, through definitive therapeutic communication, attempts to alleviate the emotional disturbances, reverse or change maladaptive patterns of behavior, and encourage personality growth and development.

18.    A separate service that may be provided to patients receiving psychotherapy is evaluation and management.  Evaluation and management services

5

require a medically appropriate history and/or examination of the patient and high level of medical decision making by the provider.

19.     During an office visit, a patient may receive psychotherapy, evaluation and management services, or both.

## BACKGROUND ON HEALTH CARE BILLING CODES FOR OFFICE VISITS

20.     The American Medical Association assigned and published numeric codes used to describe medical procedures performed by service providers, commonly referred to as Current Procedural Terminology or "CPT" codes. CPT codes were intended to accurately identify, simplify, and standardize billing for medical services. CMS reimbursed providers specific amounts, which were determined by CMS based on, among other factors, the work involved in the procedure and the complexity of the procedure. Service providers used specific CPT codes to describe the services that they claimed were provided, and health care benefit programs, including Medicare and Medicaid, relied on the submitted CPT codes to decide whether to issue or deny reimbursement.

21.     Specific CPT codes were assigned to office visits, with different codes delineating certain aspects of the office visit, including type, complexity, duration, and how the provider acquired the medicine that was administered. Medicare, Medicaid, and other health care benefit programs reimbursed service providers at increasing rates based upon the level of complexity indicated by the CPT code used to describe the office visit. They also reimbursed service providers for the cost of certain medicines

the service providers purchased and administered to patients.

### HEALTH CARE BILLING CODES FOR SPRAVATO

22.     Certain codes were specific to the administration of Spravato during an office visit that also included evaluation and management services provided to established patients.   Evaluation and management services in connection with the administration of Spravato required a medically appropriate history and/or examination of the patient and high level of medical decision making by the provider. The codes used for Spravato also varied by how the Spravato was purchased.  The codes used for the Pharmacy Buys and Bills method were different from the codes used for the Provider Buys and Bills method.

23.     At the times indicated in the below table and as relevant here, CPT codes G2082 and G2083 were designated for use when a provider bought Spravato using the Provider Buys and Bills method and administered it during an office visit that also included evaluation and management services provided to established patients. These are "bundled" codes, meaning they include reimbursement for the costs to acquire the drug, to provide evaluation and management services, and to provide two hours of post-administration observation.

| CPT Code | All Relevant Times |
|---|---|
| G2082 | Office or other outpatient visit for the evaluation and management of an established patient that requires the supervision of a physician or other qualified health care professional and provision of up to 56 mg of esketamine nasal self-administration, includes 2 hours post administration observation. |

| G2083 | Office or other outpatient visit for the evaluation and management of an established patient that requires the supervision of a physician or other qualified health care professional and provision of greater than 56 mg esketamine nasal self-administration, includes 2 hours post-administration observation. |
|---|---|

## HEALTH CARE BILLING CODES FOR PSYCHOTHERAPY

24.    Certain codes were specific to the duration of psychotherapy services provided to an established patient who also received evaluation and management services by the same physician or other qualified health care professional on the same day.   To qualify for payment, the evaluation and management services and the psychotherapy services were required to be significant and separately identifiable.   The time element incorporated into these codes (30, 45 or 60 minutes) referred to face-to-face services with the patient and/or a person speaking on their behalf.   Time spent on the activities of evaluation and management could not be included in the time used for reporting the psychotherapy service.

25.    At the times indicated in the below table and as relevant here, CPT codes 90833, 90836 and 90838 were designated for use when a patient received a medical evaluation and management service on the same day as a psychotherapy service by the same physician or other qualified health care professional.

| CPT Code | All Relevant Times |
|---|---|
| 90833 | Psychotherapy, 30 minutes with patient when performed with an evaluation and management service (List separately in addition to the code for primary procedure). |
| 90836 | Psychotherapy, 45 minutes with patient when performed with an evaluation and management service (List separately in addition to the code for primary procedure). |

8

| 90838 | Psychotherapy, 60 minutes with patient when performed with an evaluation and management service (List separately in addition to the code for primary procedure). |
|---|---|

## HEALTH CARE BILLING CODES FOR EVALUATION AND MANAGEMENT OFFICE VISITS AND FOR INTERACTIVE COMPLEXITY

26.     Certain codes were specific to office or other outpatient visits by an established patient where the service provided was limited to evaluation and management.  Evaluation and management required a medically appropriate history and/or examination and high-level medical decision-making.  Code selection could depend on the total time on the date of the encounter.

27.     An additional code could be applied to an office visit for psychiatric services that presented interactive complexity.  Interactive complexity refers to specific communication factors that complicate the delivery of a psychiatric procedure. Common factors include more difficult communication with discordant or emotional family members and engagement of young and verbally undeveloped or impaired patients. Typical patients are those who have third parties, such as parents, guardians, other family members, agencies, court officers, or schools involved in their psychiatric care. Psychiatric procedures could be reported "with interactive complexity" when at least one of the following was present:

   a. The need to manage maladaptive communication (related to, e.g., high anxiety, high reactivity, repeated questions, or disagreement) among participants that complicates delivery of care.

b. Caregiver emotions or behavior that interferes with the caregiver's understanding and ability to assist in the implementation of the treatment plan.

c. Evidence or disclosure of a sentinel event and mandated report to third party (e.g., abuse or neglect with report to state agency) with initiation of discussion of the sentinel event and/or report with patient and other visit participants.

d. Use of play equipment or other physical devices to communicate with the patient to overcome barriers to therapeutic or diagnostic interaction between the physician or other qualified health care professional and a patient who has not developed, or has lost, either the expressive language communication skills to explain his/her symptoms and response to treatment, or the receptive communication skills to understand the physician or other qualified health care professional if he/she were to use typical language for communication.

28. At the times indicated in the below table and as relevant here,

a. CPT code 99215 was designated for use for an office or other outpatient visit of a certain duration by an established patient where the service provided was limited to evaluation and management; and

b. CPT code 90785 was designated for use when specific communication factors complicated the delivery of a psychiatric procedure.

| CPT Code | Before January 1, 2021 | Effective January 1, 2021 |
|---|---|---|
| 99215 | Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components: A comprehensive history; A comprehensive examination; Medical decision making of high complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. Typically, 40 minutes are spent face-to-face with the patient and/or family. | Office or other outpatient visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and high level of medical decision making. When using total time on the date of the encounter for code selection, 40 minutes must be met or exceeded. |
| 90785 | Interactive complexity (List separately in addition to the code for primary procedure) | No change. |

## ACCURATE BILLING PRACTICES

29.     For reimbursement from Medicare or Medicaid, the cost to acquire Spravato and the service of administering Spravato during an office visit that included evaluation and management services should have been billed according to the standards outlined above. If a service provider submitted a claim for the cost of buying Spravato in addition to administering it, even though a pharmacy had paid to acquire the Spravato, such a claim would be "upcoded" or coded at a higher level than warranted for the visit.

11

30.   For reimbursement from Medicare or Medicaid, psychotherapy services that were provided on the same day as an evaluation and management service should have been billed according to the standards outlined above. If a service provider submitted a claim for services using different codes that each included evaluation and management services as a component, such a claim would be "unbundled" or coded at a higher level than warranted for the visit.

31.   For reimbursement from Medicare or Medicaid, specific communication factors that complicated the delivery of a psychiatric procedure should have been billed according to the standards outlined above. If a service provider submitted a claim for interactive complexity, but the office visit did not present one of the specified barriers to communication, such a claim would be "upcoded" or billed at a higher level than warranted for the visit.

32.   For reimbursement from Medicare or Medicaid, services could be billed only if such services were in fact provided to a patient. If a service provider submitted a claim for services that were not in fact provided to the patient during that visit, such a claim would be false.

33.   Health care benefit programs like Medicare and Medicaid would not knowingly reimburse for claims that were upcoded, unbundled, or false.

**FALSE BILLING ON BEHALF OF IHOPE CLINIC**

34.   ALBERT and CONAWAY submitted and caused to be submitted false claims to Medicare and Medicaid for reimbursement, including:

a. False and upcoded claims for reimbursement for the cost to acquire Spravato that was administered to patients when in fact the Pharmacy had paid to acquire the Spravato;

b. False and unbundled claims for evaluation and management services provided during a single office visit using different CPT codes that each included evaluation and management services as a component;

c. False and upcoded claims for interactive complexity in connection with office visits that did not present one of the specified barriers to communication; and

d. False claims for psychotherapy services during office visits when no such service was in fact provided to the patient.

35. Between on or about January 7, 2020, and continuing to on or about May 12, 2022, ALBERT and CONAWAY submitted and caused to be submitted to Medicare and Medicaid false claims totaling approximately $1,195,121.59 for the cost to acquire Spravato that in fact was acquired by the Pharmacy, resulting in overpayments totaling approximately $521,378.27.

36. Between on or about January 7, 2020, and continuing to on or about May 12, 2022, ALBERT and CONAWAY submitted and caused to be submitted to Medicare and Medicaid false claims totaling approximately $337,674.04 for separately billable procedure codes knowing that the services were not rendered and

that the codes could not be billed in conjunction with Spravato G-codes and, resulting in overpayments totaling approximately $106,228.66.

37.   In total, Between on or about January 7, 2020, and continuing to on or about May 12, 2022, ALBERT and CONAWAY submitted and caused to be submitted to Medicare and Medicaid false claims for Spravato-related treatment totaling approximately $4,451,498.44, resulting in overpayments totaling approximately $976,978.82.

## COUNT 1

### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

38.   Paragraphs 1 through 37 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

39.   Beginning at least in or around January 2020, and continuing through at least in or around May 2022, in the District of Nebraska, and elsewhere, the Defendants, ALBERT and CONAWAY, did knowingly and willfully, combine, conspire, confederate, and agree together and with others, known and unknown to the grand jury, to commit an offense against the United States, that is: to execute a scheme and artifice to defraud a health care benefit program, as defined in 18 U.S.C. § 24(b), that is Medicaid, Medicare, and other health care benefit programs, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said

14

health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of 18 U.S.C. § 1347.

40.     It was a purpose of the conspiracy for ALBERT and CONAWAY to unlawfully enrich themselves.

41.     In furtherance of the conspiracy and to accomplish its objects and purpose, the methods, manner, and means included that ALBERT and CONAWAY submitted and caused to be submitted claims to Medicaid, Medicare, and other health care benefit programs for medical services and medicine that were upcoded, unbundled, and false, including but not limited to office visits billed under CPT codes G2083, G2083, 90833, 90836, 90838, 99215, and 90785.

All in violation of 18 U.S.C. § 1349.

### COUNTS 2-9

### Health Care Fraud (18 U.S.C. §§ 1347, 2)

42.     Paragraphs 1 through 37 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

43.     Beginning at least in or around January 2020, and continuing through at least in or around May 2022, in the District of Nebraska and elsewhere, the Defendants, ALBERT and CONAWAY, aiding and abetting each other, did knowingly and willfully execute, and attempt to execute, a continuing scheme or artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, Medicaid, Medicare, and other health care benefit programs,

15

and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and omission and concealment of material facts, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, and did aid and abet the same.

44. The scheme to defraud is more fully described in paragraphs 1 through 37 of this Indictment.

45. In execution of, and in attempting to execute, the scheme, ALBERT and CONAWAY knowingly submitted, or caused to be submitted, false and upcoded claims to health care benefit programs for the purported cost to acquire a medical item, specifically, claims for payment for the cost of Spravato that in fact had been purchased by a pharmacy, using the CPT codes that are further detailed in the table below:

| Count | Medicare and Medicaid Beneficiary | Approx. Date of Service | Approx. Date of Claim Submission | Approx. Total Amount Billed | Procedure Code | Submitted By |
|---|---|---|---|---|---|---|
| 2 | C.R. | 9/30/2021 | 12/22/2021 | $1450.00 | G2083 | Angie Albert |
| 3 | C.R. | 9/3/2021 | 9/7/2021 | $1450.00 | G2083 | Brent Conaway |
| 4 | T.L. | 5/4/2021 | 8/30/2021 | $1450.00 | G2083 | Brent Conaway |
| 5 | T.L. | 3/22/2022 | 5/16/2022 | $2078.95 | G2083 | Brent Conaway |
| 6 | T.L. | 1/12/2022 | 4/20/2022 | $2078.95 | G2083 | Brent Conaway |
| 7 | T.L. | 7/1/2021 | 7/12/2021 | $1450.00 | G2083 | Angie Albert |

| 8 | D.J. | 4/27/2022 | 7/18/2022 | $2078.95 | G2083 | Angie Albert |
| 9 | M.S. | 12/21/2021 | 12/21/2021 | $1450.00 | G2083 | Angie Albert |

Each in violation of 18 U.S.C. §§ 1347 & 2.

## COUNTS 10- 17

### Health Care Fraud (18 U.S.C. §§ 1347, 2)

46.   Paragraphs 1 through 37 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

47.   Beginning at least in or around January 2020, and continuing through at least in or around May 2022, District of Nebraska, and elsewhere, the Defendants, ALBERT and CONAWAY, aiding and abetting each other, did knowingly and willfully execute, and attempt to execute, a continuing scheme or artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, Medicaid, Medicare, and other health care benefit programs, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and omission and concealment of material facts, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, and did aid and abet the same.

48.   The scheme to defraud is more fully described in paragraphs 1 through 37 of this Indictment.

49.   In execution of, and in attempting to execute, the scheme, ALBERT and

17

CONAWAY knowingly submitted, or caused to be submitted, false claims to health care benefit programs for payment of purported medical services, specifically, claims for payment that were upcoded, unbundled, and false, using the CPT codes that are further detailed in the table below.

| Count | Medicare and Medicaid Beneficiary | Approx Date of Service | Approx Date of Claim Submission | Approx. Total Amount Billed | Procedure Codes | Submitted By |
|---|---|---|---|---|---|---|
| 10 | C.R. | 9/30/2021 | 10/4/2021 | $525.00 | 99215 90833 90785 | Angie Albert |
| 11 | C.R. | 9/3/2021 | 9/7/2021 | $465.00 | 99215 90833 | Brent Conaway |
| 12 | T.L. | 5/4/2021 | 8/30/2021 | $465.00 | 99215 90833 | Brent Conaway |
| 13 | T.L. | 3/22/2022 | 5/16/2022 | $476.23 | 99215 90833 | Brent Conaway |
| 14 | T.L. | 1/12/2022 | 4/20/2022 | $476.23 | 99215 90833 | Brent Conaway |
| 15 | T.L. | 7/1/2021 | 7/12/2021 | $465.00 | 99215 90833 | Angie Albert |
| 16 | D.J. | 4/27/2022 | 7/18/2022 | $476.23 | 99215 90833 | Angie Albert |
| 17 | M.S. | 12/21/2021 | 12/21/2021 | $465.00 | 99215 90833 | Angie Albert |

Each in violation of 18 U.S.C. §§ 1347 & 2.

## COUNTS 18-22

## Money Laundering (18 U.S.C. § 1957, 2)

50.     On or about the dates set forth below, in the District of Nebraska and elsewhere, the defendants, ALBERT and CONAWAY did knowingly engage and attempt to engage in a monetary transaction by, through or to a financial institution, affecting

18

interstate commerce, in criminally derived property of a value greater than $10,000, as set forth below, and did aid and abet the same, such property having been derived from a specified unlawful activity, that is: Health Care Fraud and Conspiracy to Commit Health Care Fraud, as alleged in Counts 1-17, in violation of Title 18, United States Code, Sections 1347, 1349 and 2.

| Count | Defendant(s) | Date | Description of Transaction |
|---|---|---|---|
| 18 | Albert | December 27, 2021 | Delivery of check for $69,830 to Edwards Chevrolet in connection with purchase of a Lincoln Navigator |
| 19 | Albert | January 4, 2022 | Transfer of $185,000 from Account xx1216 at Union Bank and Trust to Account xx615 at TD Ameritrade |
| 20 | Albert | March 14, 2022 | Delivery of Cashier's Checks in the amount of $241,024.14 and $300,000.00 to Old Republic Title Company of Oklahoma in connection with purchase of real estate for $542,500.00 |
| 21 | Albert | July 15, 2022 | Delivery of check for $37,306.49 to American Eagle Harley Davidson in connection with purchase of motorcycle |
| 22 | Albert | July 5, 2023 | Delivery of check for $97,205 to BNF Henderson Auctions in connection with purchase of a motorhome |

All in violation of Title 18, United States Codes, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

51.     The allegations contained in Counts 1 through 22 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(1)(a)(C), 982(a)(1), and 982(a)(7).

52.     Upon conviction of the offense(s) in violation of Title 18, United States Code, Sections 1347 and/or 1349 set forth in Count(s) 1-17 of this Indictment, the defendants, ALBERT and CONAWAY, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

53.     Upon conviction of the offense(s) in violation of Title 18, United States Code, Section 1957 set forth in Count(s) 18-22 of this Indictment, the defendants, ALBERT and CONAWAY, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

54.     The property to be forfeited includes, but is not limited to, the following:

    a. A money judgment in an amount equal to the proceeds obtained as a result of the offenses;

    b. Real property located at 1317 S Broadway Ave, Hinton, OK  73047;

    c. 2017 Harley Davidson motorcycle FLHTCUTG, VIN

20

1HD1MAD16HB859772;

    d. Ford F-150 truck, VIN 1FTFW1E56JFD28458;

    e. Lincoln Navigator, VIN 5LMJJ3TT9KEL03544; and

    f. 2009 Holiday Rambler Septer, VIN 1RF43561193048875.

55. If any of the property described above, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(7) and 28 U.S.C. § 2461(c).

A TRUE BILL.

_____
FOREPERSON

21

UNITED STATES OF AMERICA, Plaintiff

LESLEY A. WOODS
United States Attorney
District of Nebraska

By: _____
DANIEL PACKARD, #21991
Assistant U.S. Attorney

The United States of America requests that trial of this case be held in Lincoln, Nebraska, pursuant to the rules of this Court.

_____
DANIEL PACKARD, #21991
Assistant U.S. Attorney